951 F.2d 363
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Albert A. ENRIQUEZ, Defendant-Appellant.
 No. 91-10131.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 10, 1991.*
Decided Dec. 13, 1991.
 
 Before ALDISERT**, GOODWIN and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 FACTS
 
 2
 In the early afternoon of June 20, 1990, Albert A. Enriquez and his travelling companion, Aldo Ray Navarro, arrived at Honolulu International Airport on a commercial flight from Los Angeles. Both men had carry-on baggage with them. The men walked to the sidewalk just outside the airport terminal. They were followed by DEA Task Force Agents Joyce Alapa and Michael Johnson. As the men walked past him, Johnson displayed his credentials and said: "Hi, police officer, may I talk with you guys for a couple of minutes?" The men turned and faced Johnson. Navarro replied "Yeah, sure".
 
 
 3
 Johnson asked both men if he could see their airline tickets. Both complied. Johnson handed the tickets back to the men after a quick examination. Alapa then asked Enriquez if he had any identification. Enriquez checked his pockets and realized he had forgotten his wallet. He ran suddenly back into the terminal building to the men's bathroom, where he had left his wallet. The agents did nothing to prevent Enriquez from leaving. Enriquez reappeared a couple of minutes later. He removed his California driver's license from his wallet and handed it to Alapa. She and Johnson examined the license and gave it back to Enriquez.
 
 
 4
 Johnson asked Enriquez and Navarro if either were carrying any drugs. Both men replied "no". Johnson then asked Navarro if he could search Navarro's bag. Navarro consented; no drugs were found. At the same time, Alapa asked Enriquez which bags were his. Enriquez replied "these two are mine", pointing to a brown bag and a plastic shopping bag. Alapa asked for permission to search his bags. Enriquez responded "go ahead". Enriquez bent down and began unzipping the brown bag for Alapa. She knelt next to him and said "that's all right; I'll do that". Enriquez said "okay" and stood up. In the bag, Alapa found a brick-like package wrapped tightly with yellow tape and the word "TINA" printed on it. Alapa lifted the brick partially out of the bag and asked "what's this?" Enriquez stammered "Ahhh, that's ahh, that's my things for ..." and never completed the sentence. Alapa used a key to pierce the side of the brick, which contained a white substance consistent with the appearance of cocaine. Alapa also found a paper sack in the side pocket of Enriquez's brown bag. Inside the paper sack was a transparent ziplock bag containing a white powder consistent with the appearance of cocaine. Later testing showed the substances to be more than a kilogram of cocaine.
 
 
 5
 On October 25, 1990, Senior District Judge Martin Pence denied Enriquez's motion to suppress the evidence gathered by the search. On that same day, Enriquez entered a conditional plea of guilty to one count of conspiracy to distribute and possess with intent to distribute more than five hundred grams of cocaine. Enriquez reserved his right to appeal the district court's denial of his motion to suppress evidence. He was sentenced to five years' imprisonment. This timely appeal of his conviction followed. This court has jurisdiction under 28 U.S.C. § 1291.
 
 ANALYSIS
 
 6
 Enriquez argues that his encounter with Agents Alapa and Johnson was a "seizure" within the meaning of the Fourth Amendment. However, "no seizure occurs when police ask questions of an individual, ask to examine the individual's identification, and request consent to search his or her luggage--so long as the officers do not convey a message that compliance with their requests is required." Florida v. Bostick, --- U.S. ----, 111 S.Ct. 2382, 2388 (1991). (See id. at 2386, citing relevant cases.) The agents who stopped Enriquez did no more than ask questions of him, examine his identification and request his consent to their search of his luggage. That troika of events does not itself constitute a seizure and Enriquez nowhere suggests that the agents did anything more to "convey a message that compliance with their requests is required". Id.
 
 
 7
 Motions to suppress evidence are reviewed de novo. However, the district court's findings of fact at a suppression hearing are upheld unless clearly erroneous. The ultimate conclusion of the lawfulness of a seizure is a mixed question of law and fact that is reviewed de novo. U.S. v. Mitchell, 812 F.2d 1250, 1253 (9th Cir.1987). The district court's factual finding that Enriquez's sidewalk encounter with Agents Alapa and Johnson was not clearly erroneous. Nor did the district court err in concluding that Enriquez was not seized.
 
 
 8
 Enriquez also contends that consent to search his bags did not include consent to search the wrapped and sealed brick of cocaine hidden in one of them. The Supreme Court has recently said that if a defendant's "consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." Florida v. Jimeno, 500 U.S. ----, 111 S.Ct. 1801, 1804 (1991). In Jimeno, the Court found that "it was objectively reasonable for the police to conclude that the general consent to a search of respondent's car included his consent to search containers within that car which might bear drugs." Id. The Court specifically rejected the idea that the "if the police wish to search closed containers within a car they must separately request permission to search each container". Id.
 
 
 9
 Consent to search a car includes consent to search the closed containers within that car. A fortiori, consent to search a bag includes consent to search the closed containers within that bag. Only this conclusion accords with Jimeno and this court's earlier holding that when a suspect gives "consent to search [his] bag, he ha[s] no reasonable expectation of privacy in any of its contents ..." U.S. v. Mines, 883 F.2d 801, 804 (9th Cir.1989), cert. den., --- U.S. ----, 110 S.Ct. 552 (1990) (emphasis added). See also United States v. Dyer, 784 F.2d 812 (7th Cir.1986) (valid consent to search article includes consent to search all enclosed containers found therein); United States v. Smith, 901 F.2d 1116, 1119 (D.C.Cir.1990) (holding that "valid consent, unwithdrawn, to search a container, extends to a search of other containers found therein, at least where the inner container is such that it could contain the object of the search.")
 
 
 10
 Enriquez knew that Alapa would be looking for drugs in his bag. He nonetheless gave her his consent. Enriquez "might have withdrawn or limited his consent, even during the search. His failure to do so indicates he consented to the entire search and everything it revealed." U.S. v. Mines, 883 F.2d at 804-05. Enriquez had an opportunity to withdraw his consent to Alapa's search of the wrapped brick of cocaine when she asked him "what's this?" He could not have been surprised by the resumption of her search in the face of his silence.
 
 
 11
 A district court's determination whether a defendant voluntarily consented to a search depends on the totality of circumstances and is a question of fact reviewed under the clearly erroneous standard. United States v. Brown, 884 F.2d 1309, 1311 (9th Cir.1989), cert. den. --- U.S. ----, 110 S.Ct. 732 (1990). The district court's factual finding that Enriquez consented to the search of his bags and the closed containers within them was not clearly erroneous.
 
 
 12
 Finally, Enriquez argues that the police practice of approaching travellers of whom they have no reasonable suspicion and asking them questions is somehow unconstitutional. But this practice "is by no means novel; it has been endorsed by the Court any number of times. Terry, Royer, Rodriguez, and Delgado are just a few examples." Bostick 111 S.Ct. at 2388 (referring to Terry v. Ohio, 392 U.S. 1, 19, n. 16 (1968); Florida v. Royer, 460 U.S. 491, 497 (1983) (plurality opinion); Florida v. Rodriguez, 469 U.S. 1, 5-6 (1984); INS v. Delgado, 466 U.S. 210, 216 (1984)). To find this police practice unconstitutional would require "overruling a long, unbroken line of decisions dating back more than 20 years". Id. This court has neither power nor reason to do so.
 
 
 13
 The district court did not err in denying Enriquez's motion to suppress evidence. Enriquez's conviction is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Cir.R. 34-4
 
 
 **
 The Honorable Ruggero J. Aldisert, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3